FILED

DEC 1 4 2017

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

v.

GEORGE M. MARTIN,

Defendant.

Case No. 17cr4232-JM

I N F O R M A T I O N

Title 18, U.S.C., Sec. 2 – Aiding and Abetting

The United States Attorney charges:

## COUNT 1

[AIDING AND ABETTING – 18 U.S.C. § 2]

1.      Defendant GEORGE M. MARTIN knew, with advance knowledge, the circumstances constituting willful violations of Title 31, United States Code, Sections 5318 and 5322 and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d).

2.      Defendant GEORGE M. MARTIN actively aided, abetted, and counseled another person with respect to at least one element of willfully violating Title 31, United States Code, Sections 5318 and 5322, and the statutes and regulations issued thereunder,

including specifically Title 31, Code of Federal Regulations, Sections 1020.210(b)(5)(ii), 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), by employing the following manner and means:

    a.    Defendant GEORGE M. MARTIN in his capacity as a Vice President and Anti-Money Laundering Investigations Manager with Rabobank, National Association ("RNA" or the "Bank") and at the direction and/or with the knowledge of his superiors at RNA, implemented RNA policies and procedures that precluded and/or suppressed investigations by RNA's Financial Intelligence Unit (the "FIU") into potentially suspicious transactions that occurred at RNA, by RNA accountholders, or by persons conducting transactions on behalf of RNA accountholders relevant to a possible violation of law or regulation. These potentially suspicious transactions were identified by RNA's electronic monitoring software program called Global Vision Patriot Officer ("GVPO") and included transactions by certain customers deemed "High-Risk" and who had been the subject of prior reports of suspicious transactions filed by RNA with the Secretary of the Treasury under Title 31, United States Code, Section 5318(g)(1), and the regulations thereunder (a "suspicious activity report" or a "SAR").

    b.    Among the policies and procedures created by RNA and implemented by Defendant GEORGE M. MARTIN and others to prevent adequate investigations into suspicious activity was the "Security CMIR Mitigation." In particular, the Security CMIR Mitigation policy purported to provide a justification for the deliberate failure to investigate or file suspicious activity reports on cross-border transactions, effected by RNA's customers or their agents, designed to prevent the filing of Reports of International Transportation of Currency or Monetary Instruments ("CMIRs") at the U.S./Mexico border.

    c.    At the time of the implementation of the Security CMIR Mitigation policy, Defendant GEORGE M. MARTIN and others knew that any person failing to file a CMIR or structuring a transaction for the purpose of evading the filing of a required

CMIR (that is, breaking up cash imports or exports to increments less than $10,000) was violating Title 31, United States Code, Section 5324. Defendant GEORGE M. MARTIN knew that RNA, pursuant to Title 31 United States Code, Section 5318, and the statutes and regulations issued thereunder, was obligated to file a SAR reporting such transactions; yet Defendant GEORGE M. MARTIN and others caused RNA to willfully fail to report such structured transactions.  This willful failure affected dozens of customer accounts in RNA's Calexico and Tecate, California branches, located within the Southern District of California.

d.     At the direction of his supervisors, Defendant GEORGE M. MARTIN managed RNA's FIU staff "to the numbers." For example, Defendant GEORGE M. MARTIN and his superiors established a "production environment" to resolve or "clear" GVPO suspicious activity alerts at a per-day rate that MARTIN knew was unrealistic and would prevent FIU staff from conducting adequate investigation into suspicious transactions.

e.     RNA established a "Verified Activity List," which included Mexican business, resident alien, and domestic RNA accountholders. Transactions by the accountholders on the Verified Activity List generated GVPO alerts for indicia of money laundering, potential violations of the BSA, and potential violations of other law, yet each was exempted from further BSA/AML scrutiny and FIU investigation because they had ostensibly been vetted or "verified" previously and had been presumed not to be suspicious.

f.     Defendant GEORGE M. MARTIN and others willfully misused RNA's Verified Activity List by aggressively listing accounts without conducting adequate investigation into the allegedly verified transactions and without reviewing previous investigations when the allegedly verified account activity changed.

g.     At the time when the suppression of investigations into verified alerts of suspicious activity occurred, Defendant GEORGE M. MARTIN and others knew that such suppression would result in failures by the FIU to adequately investigate

3

suspicious financial transactions and file the required SARs with the Secretary of the Treasury, in willful violation of Title 31, United States Code, Sections 5318 and 5322, and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210(b)(5)(ii), 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii).

h.    As a result of Defendant GEORGE M. MARTIN's and others' conduct, millions of dollars in suspicious cash and wire transactions passed through RNA accounts in the Southern District of California without adequate BSA/AML scrutiny.

3.    Defendant GEORGE M. MARTIN acted voluntarily with the knowledge and intention of helping others commit an offense against the United States of America under Title 31, United States Code, Sections 5318 and 5322, and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d), by taking the following affirmative acts, among others, in the Southern District of California, and elsewhere, in furtherance of that offense:

a.    In or about 2009, RNA, through Defendant GEORGE M. MARTIN and others, amended RNA's BSA/AML policies to preclude RNA's FIU personnel from investigating GVPO alerts of certain potentially suspicious transactions, including from customers deemed "High-Risk" and who had been the subject of prior SARs filed by RNA.

b.    In or about 2009, RNA, through Defendant GEORGE M. MARTIN and others, amended, approved, and published RNA's 2009 "High-Risk Customer Policy", stating, "GVPO will exclude [Verified Activity] from the alert queue in future GVPO monthly batches. This enables BSA staff to allocate resources more effectively, with a focus on 'unverified' alert activity."

c.    Defendant GEORGE M. MARTIN and others directed FIU staff to increase the number of bank accounts on the Verified Activity List, without adhering to

4

acceptable standards governing those additions, with the result that the number of accounts on the Verified Activity List increased from less than 10 in 2009 to more than 1,000 by 2012.

d.      In or about May 2009, RNA established daily and monthly GVPO suspicious transaction alert review milestones for FIU monitoring personnel.  As directed by management, Defendant GEORGE M. MARTIN enforced these milestones knowing that it would be impossible for FIU personnel to both meet the review requirements and conduct adequate BSA/AML investigations into suspicious transactions.

e.      In or about February 2010, Defendant GEORGE M. MARTIN and others were informed about potential money laundering activity in a Mexican-based business account with RNA at RNA's Calexico, California branch, which is located within the Southern District of California. Defendant GEORGE M. MARTIN and others decided not to investigate further, or file a SAR regarding the account, because the Bank's Calexico branch staff wanted to solicit additional business from the accountholders. In approximately August 2011, the account's contents were seized by law enforcement on suspicion the accounts were being used to move millions of dollars in drug proceeds. Defendant GEORGE M. MARTIN and others again decided not to investigate further, or file a SAR regarding the account; nor did they terminate the account. Notwithstanding the fact that more than $10 million in suspicious cash and wire transactions passed through the account from in or about 2009 through in or about 2011, RNA took no action on the account until in or about October 2012.

f.      In or about February 2010, Defendant GEORGE M. MARTIN and others willfully curtailed BSA/AML investigations into a Mexican-based business account at RNA that conducted large, sequential cash withdrawals, in a pattern that appeared to evade the filing of CTRs, even though this RNA account, and its owners, and their related businesses, had been the subject of no less than 25 prior SARs that RNA filed

with the Secretary of the Treasury. Between on or about November 6, 2009 and January 22, 2010, the main business issued approximately 50 checks, each in the amount of $9,500, to 12 individuals who negotiated them for approximately $484,500 in cash. Many of the individuals conducted the cash withdrawals on the same day and at different times all at RNA's Tecate, California branch located in the Southern District of California. Despite being told that the structured cash transactions were conducted in part to avoid the filing of CMIRs, Defendant GEORGE M. MARTIN and others caused RNA to willfully fail to file SARs regarding these transactions. On or about February 12, 2010, Defendant GEORGE M. MARTIN notified another FIU employee of this decision in an email, writing "No more SARs for them!"

g.      In or about June 2010, Defendant GEORGE M. MARTIN and others were instructed they could leave open accounts through which "undeniably" structured cash transactions were conducted – in part to avoid filing CMIRs – so long as they filed SARs. Nevertheless, Defendant GEORGE M. MARTIN and others caused RNA to willfully fail to file suspicious activity reports regarding dozens of personal accounts based at RNA's Calexico and Tecate, California branches, improperly using a "Security CMIR Mitigation" justification to rationalize the failure to report this activity or close the involved accounts.

h.      In September 2010, Defendant GEORGE M. MARTIN emailed another RNA executive regarding cash deposit restrictions that Mexico imposed on Mexican financial institutions located near the U.S.-Mexico border due to money laundering concerns. In his email, Defendant GEORGE M. MARTIN explained that the FIU could expect BSA/AML consequences of these Mexican cash deposit restrictions for RNA's "border branches" in the form of increased alerts of suspicious transactions at RNA's border branches.

i.      At the time of committing the foregoing acts, Defendant GEORGE M. MARTIN and others knew of RNA's willful failures to comply with the

6

1   requirements of the Bank Secrecy Act and its related regulations and that some of

2   those failures occurred in the Southern District of California. Though he knew about

3   these failures, Defendant GEORGE M. MARTIN did not correct them, despite

4   knowing he had a duty to do so.

5   j.      In or about March 2012, Defendant GEORGE M. MARTIN emailed FIU

6   personnel, and stated that increasing the number of accounts on the Verified Activity

7   List "continues to be an area of interest for GM [MARTIN] as this will continue to

8   reduce the amount of actual suspects we have to work, month after month."

9   4.      Defendant GEORGE M. MARTIN committed the foregoing acts before the

10  willful violations of Title 31, Code of Federal Regulations, Sections 1020.210,

11  1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations,

12  Sections 21.21(c) and 21.21(d), were completed.

13  5.      Defendant GEORGE M. MARTIN committed the foregoing acts while he was

14  aware of the particular circumstances that constituted the offense against the United States

15  of America, and at a time when Defendant GEORGE M. MARTIN still had a realistic

16  opportunity to withdraw from the crime.

17  All in violation of Title 18, United States Code, Section 2.

18  DATED: December 14, 2017

19  ADAM L. BRAVERMAN                         JOHN P. CRONAN

20  United States Attorney                    Acting Assistant Attorney General

21  Southern District of California           Criminal Division

22  ERIC BESTE                                DEBORAH L. CONNOR

23  Chief, Major Frauds and Special           Acting Chief, Money Laundering and
    Prosecutions Section                      Asset Recovery Section

24

25

26  DANIEL C. SILVA                           KEVIN G. MOSLEY

27  MARK W. PLETCHER                          MARIA K. VENTO
    PHILLIP L.B. HALPERN                      Trial Attorneys

28  Assistant U.S. Attorneys

7