ALANA W. ROBINSON
Acting United States Attorney
Daniel C. Silva
California Bar No. 264632
Mark W. Pletcher
Colorado Bar No. 34615
Phillip L.B. Halpern
California Bar No. 133370
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9713
Email: daniel.c.silva@usdoj.gov

DEBORAH L. CONNOR
Acting Chief, Money Laundering and Asset Recovery Section (MLARS)
Kevin G. Mosley
Virginia Bar No. 65765
Maria K. Vento
Virginia Bar No. 45960
Trial Attorneys, Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263
Email: kevin.mosley@usdoj.gov

Attorneys for United States of America

FILED
DEC 1 4 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GEORGE M. MARTIN,<br><br>Defendant. | Case No. 17cr4232-JM<br><br>DEFERRED PROSECUTION AGREEMENT |

IT IS HEREBY AGREED between the UNITED STATES OF AMERICA, through its counsel, Alana W. Robinson, Acting United States Attorney, and Assistant United States Attorneys Daniel C. Silva, Mark W. Pletcher, and Phillip L.B. Halpern, and Department of Justice Trial Attorneys Kevin G. Mosley and Maria K. Vento (the "United States"), and defendant GEORGE M. MARTIN, with the advice and consent of Robert Long, Esq., counsel for Defendant, as follows:

Deferred Prosecution Agreement                                   Def. Initials _____
                                                                 17CR_____

# I
# THE CHARGE

Defendant agrees to waive indictment and be charged in a one-count Information charging him with aiding, abetting, counseling, and procuring the commission of an offense against the United States of America, to wit: willful violations of the Bank Secrecy Act, in violation of Title 31, United States Code, Sections 5318 and 5322, and Title 18, United States Code, Section 2 (the "Information").

By entering this Agreement, which becomes effective upon signing by Defendant, undersigned defense counsel, and, ultimately by undersigned counsel for the United States, Defendant: (a) knowingly waives his right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the below Section IV(B) "Elements Understood and Admitted – Factual Basis" (the "Factual Basis") any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Southern District of California.

# II
# DEFERRAL OF PROSECUTION

It appears that the interest of the United States, Defendant's interests, and the interests of justice will be served by deferring prosecution of this offense for a period of 24 months (the "Deferral Period"), provided Defendant complies with the terms and conditions of this Agreement. If Defendant complies with the terms and conditions of this Agreement, the United States agrees to dismiss the charge in the Information and agrees not to prosecute Defendant for any conduct described the Factual Basis. Within thirty days of the expiration of the Deferral Period, (or earlier if the United States, in its sole discretion, determines to do so), the United States shall seek dismissal of the Information. However, should the United States determine in its sole discretion that Defendant, after the execution

of this Agreement and prior to the end of the Deferral Period, has violated the terms and conditions of this Agreement, the United States may proceed with prosecution. The parties agree that neither this Agreement nor the Information constitutes a final adjudication on the merits of any charges.

The parties jointly recommend a 24-month "Deferral Period." The Deferral Period shall commence upon the entry by the Court of an order approving the Agreement and excluding the time from the effective date of the Agreement through the end of the Deferral Period from consideration under the Speedy Trial Act (Title 18, United States Code, Section 3161(h)(2)). From the effective date of the Agreement through the end of the Deferral Period, Defendant will comply with the following conditions:

1. Defendant shall not violate any federal, state, or local law, including federal tax law;

2. Defendant agrees to continue to cooperate fully with the United States' investigation into Rabobank, National Association and related entities and persons.

During the Deferral Period, Defendant will comply with the following additional conditions:

1. Defendant shall remain under the supervision of United States Pretrial Services;

2. Defendant shall complete 50 hours of community service.

If Defendant fails to specifically perform or to fulfill completely each of his obligations under this Agreement, after the execution of this Agreement and prior to the end of the Deferral Period, regardless of whether the United States becomes aware of such a breach prior to or after the Deferral Period is complete, Defendant may thereafter be subject to prosecution, at the sole discretion of the United States, for any federal criminal violation of which the United States has knowledge, including, but not limited to, the charge in the Information described in Paragraph 1 and any other charges that arise from

Deferred Prosecution Agreement   3   Def. Initials _JM_
                                                17CR____

the conduct set forth in the Factual Basis below, which may be pursued in the U.S. District Court for the Southern District of California or any other appropriate venue.

Determination of whether Defendant has breached this Agreement and whether to pursue prosecution of Defendant shall be in the United States' sole discretion. Any such prosecution may be premised on information provided by Defendant to the United States. Any such prosecution relating to the conduct described in the Factual Basis or relating to conduct known to the United States prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Defendant notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Deferral Period plus six months. Thus, by signing this Agreement, Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Deferral Period plus six months. In addition, Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the Deferral Period will be tolled from the date upon which the violation occurs for the duration of the Deferral Period plus six months, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

Defendant agrees that in the event that the United States determines, in its sole discretion, that Defendant has violated any provision of this Agreement, an extension or extensions of the Deferral Period may be imposed by the United States, in its sole discretion, for up to a total additional time period of 12 months, without prejudice. Any extension of the Agreement extends all terms of this Agreement.

In the event that the United States determines that Defendant has breached this Agreement, the United States agrees to provide Defendant with written notice of such breach prior to instituting any prosecution or extension of the Deferral Period resulting from such breach. Within thirty (30) days of receipt of such notice, Defendant shall have the opportunity to respond to the United States in writing to explain the nature and

circumstances of such breach. The United States shall consider Defendant's explanation in determining whether to institute a prosecution or extend the Deferral Period. For the purposes of this Agreement, Defendant shall be deemed to have received notice as of the day written notice is mailed, sent, or otherwise transmitted to: the last known mailing or e-mail address of Defendant or any person who has agreed to accept service of such notice on Defendant's behalf or the mailing or e-mail address of undersigned defense counsel for Defendant.

In the event that the United States determines that Defendant has breached this Agreement, Defendant agrees that: (a) all statements to the United States, its agents, or to the Court made by or adopted by Defendant, including the Factual Basis herein, and any testimony given by Defendant before a grand jury, a Court, or any tribunal, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against Defendant; and (b) Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or adopted by Defendant prior to or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.

Defendant acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if Defendant breaches this Agreement and this matter proceeds to judgment. Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

The United States, in its sole discretion, and on the condition that Defendant has complied with the terms of this Agreement, may terminate this Agreement at any time.

## III
## SPEEDY TRIAL

Defendant is aware of his right to a speedy trial (within 70 days of the filing of the Information) on these charges and expressly waives that right. In addition, Defendant stipulates that the time period from the effective date of this Agreement until the conclusion of the Deferral Period is excludable time pursuant to Title 18, United States Code, Sections 3161(h)(2).

## IV
## NATURE OF THE OFFENSE

A. <u>Elements Explained:</u>

Defendant understands that the offense to which Defendant engaged in has the following elements:

1. Beginning no later than March 2009, and ending no sooner than April 1, 2012, someone willfully violated Title 31, United States Code, Sections 5318 and 5322, and statutes and regulations issued thereunder, specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii) and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d).

2. The defendant aided, abetted, counseled, commanded, induced, or procured the violation of at least one element of Title 31, United States Code, Sections 5318 5322, and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d);

3. The defendant acted with the intent to facilitate the willful violation of Title 31, United States Code, Sections 5318 and 5322, and statutes and regulations issued thereunder, specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii) and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d); and

4. The defendant acted before the crime was completed.

B. <u>Elements Understood and Admitted – Factual Basis:</u>

Defendant has fully discussed the facts of this case with defense counsel. Defendant understands the elements of the crime, and agrees that there is a factual basis for this Agreement. Defendant admits that the following facts are true and undisputed:

1. MARTIN knew, with advance knowledge, the circumstances constituting willful violations of Title 31, United States Code, Sections 5318 and 5322 and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d).

2. MARTIN actively aided, abetted, and counseled another person with respect to at least one element of willfully violating Title 31, United States Code, Sections 5318 and 5322, and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210(b)(5)(ii), 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), by employing the following manner and means:

a. MARTIN in his capacity as a Vice President and Anti-Money Laundering Investigations Manager with Rabobank, National Association ("RNA" or the "Bank") and at the direction and/or with the knowledge of his superiors at RNA, implemented RNA policies and procedures that precluded and/or suppressed investigations by RNA's Financial Intelligence Unit (the "FIU") into potentially suspicious transactions that occurred at RNA, by RNA accountholders, or by persons conducting transactions on behalf of RNA accountholders relevant to a possible violation of law or regulation. These potentially suspicious transactions were identified by RNA's electronic monitoring software program called Global Vision Patriot Officer ("GVPO") and included transactions by certain customers deemed "High-Risk" and who had been the subject of prior reports of suspicious transactions filed by RNA with the Secretary of the Treasury under Title 31, United States Code, Section 5318(g)(1), and the regulations thereunder (a "suspicious activity report" or a "SAR").

b. Among the policies and procedures created by RNA and implemented by MARTIN and others to prevent adequate investigations into suspicious activity was the "Security CMIR Mitigation." In particular, the Security CMIR Mitigation policy purported to provide a justification for the deliberate failure to investigate or file suspicious activity reports on cross-border transactions, effected by RNA's customers or their agents, designed to prevent the filing of Reports of International Transportation of Currency or Monetary Instruments ("CMIRs") at the U.S./Mexico border.

c. At the time of the implementation of the Security CMIR Mitigation policy, MARTIN and others knew that any person failing to file a CMIR or structuring a transaction for the purpose of evading the filing of a required CMIR (that is, breaking up cash imports or exports to increments less than $10,000) was violating Title 31, United States Code, Section 5324. MARTIN knew that RNA, pursuant to Title 31 United States Code, Section 5318, and the statutes and regulations issued thereunder, was obligated to file a SAR reporting such transactions; yet MARTIN and others caused RNA to willfully fail to report such structured transactions. This willful failure affected dozens of customer accounts in RNA's Calexico and Tecate, California branches, located within the Southern District of California.

d. At the direction of his supervisors, MARTIN managed RNA's FIU staff "to the numbers." For example, MARTIN and his superiors established a "production environment" to resolve or "clear" GVPO suspicious activity alerts at a per-day rate that MARTIN knew was unrealistic and would prevent FIU staff from conducting adequate investigation into suspicious transactions.

e. RNA established a "Verified Activity List," which included Mexican business, resident alien, and domestic RNA accountholders. Transactions by the accountholders on the Verified Activity List generated GVPO alerts for indicia of money laundering, potential violations of the BSA, and potential violations of other law, yet each was exempted from further BSA/AML scrutiny and FIU investigation

because they had ostensibly been vetted or "verified" previously and had been presumed not to be suspicious.

f.  MARTIN and others willfully misused RNA's Verified Activity List by aggressively listing accounts without conducting adequate investigation into the allegedly verified transactions and without reviewing previous investigations when the allegedly verified account activity changed.

g.  At the time when the suppression of investigations into verified alerts of suspicious activity occurred, MARTIN and others knew that such suppression would result in failures by the FIU to adequately investigate suspicious financial transactions and file the required SARs with the Secretary of the Treasury, in willful violation of Title 31, United States Code, Sections 5318 and 5322, and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210(b)(5)(ii), 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii).

h.  As a result of MARTIN's and others' conduct, millions of dollars in suspicious cash and wire transactions passed through RNA accounts in the Southern District of California without adequate BSA/AML scrutiny.

3.  MARTIN acted voluntarily with the knowledge and intention of helping others commit an offense against the United States of America under Title 31, United States Code, Sections 5318 and 5322, and the statutes and regulations issued thereunder, including specifically Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d), by taking the following affirmative acts, among others, in the Southern District of California, and elsewhere, in furtherance of that offense:

a.  In or about 2009, RNA, through MARTIN and others, amended RNA's BSA/AML policies to preclude RNA's FIU personnel from investigating GVPO alerts of certain potentially suspicious transactions, including from customers deemed "High-Risk" and who had been the subject of prior SARs filed by RNA.

b. In or about 2009, RNA, through MARTIN and others, amended, approved, and published RNA's 2009 "High-Risk Customer Policy", stating, "GVPO will exclude [Verified Activity] from the alert queue in future GVPO monthly batches. This enables BSA staff to allocate resources more effectively, with a focus on 'unverified' alert activity."

c. MARTIN and others directed FIU staff to increase the number of bank accounts on the Verified Activity List, without adhering to acceptable standards governing those additions, with the result that the number of accounts on the Verified Activity List increased from less than 10 in 2009 to more than 1,000 by 2012.

d. In or about May 2009, RNA established daily and monthly GVPO suspicious transaction alert review milestones for FIU monitoring personnel. As directed by management, MARTIN enforced these milestones knowing that it would be impossible for FIU personnel to both meet the review requirements and conduct adequate BSA/AML investigations into suspicious transactions.

e. In or about February 2010, MARTIN and others were informed about potential money laundering activity in a Mexican-based business account with RNA at RNA's Calexico, California branch, which is located within the Southern District of California. MARTIN and others decided not to investigate further, or file a SAR regarding the account, because the Bank's Calexico branch staff wanted to solicit additional business from the accountholders. In approximately August 2011, the account's contents were seized by law enforcement on suspicion the accounts were being used to move millions of dollars in drug proceeds. MARTIN and others again decided not to investigate further, or file a SAR regarding the account; nor did they terminate the account. Notwithstanding the fact that more than $10 million in suspicious cash and wire transactions passed through the account from in or about 2009 through in or about 2011, RNA took no action on the account until in or about October 2012.

f.  In or about February 2010, MARTIN and others willfully curtailed BSA/AML investigations into a Mexican-based business account at RNA that conducted large, sequential cash withdrawals, in a pattern that appeared to evade the filing of CTRs, even though this RNA account, and its owners, and their related businesses, had been the subject of no less than 25 prior SARs that RNA filed with the Secretary of the Treasury. Between on or about November 6, 2009 and January 22, 2010, the main business issued approximately 50 checks, each in the amount of $9,500, to 12 individuals who negotiated them for approximately $484,500 in cash. Many of the individuals conducted the cash withdrawals on the same day and at different times all at RNA's Tecate, California branch located in the Southern District of California. Despite being told that the structured cash transactions were conducted in part to avoid the filing of CMIRs, MARTIN and others caused RNA to willfully fail to file SARs regarding these transactions. On or about February 12, 2010, MARTIN notified another FIU employee of this decision in an email, writing "No more SARs for them!"

g.  In or about June 2010, MARTIN and others were instructed they could leave open accounts through which "undeniably" structured cash transactions were conducted – in part to avoid filing CMIRs – so long as they filed SARs. Nevertheless, MARTIN and others caused RNA to willfully fail to file suspicious activity reports regarding dozens of personal accounts based at RNA's Calexico and Tecate, California branches, improperly using a "Security CMIR Mitigation" justification to rationalize the failure to report this activity or close the involved accounts.

h.  In September 2010, MARTIN emailed another RNA executive regarding cash deposit restrictions that Mexico imposed on Mexican financial institutions located near the U.S.-Mexico border due to money laundering concerns. In his email, MARTIN explained that the FIU could expect BSA/AML consequences of these



Mexican cash deposit restrictions for RNA's "border branches" in the form of increased alerts of suspicious transactions at RNA's border branches.

i. At the time of committing the foregoing acts, MARTIN and others knew of RNA's willful failures to comply with the requirements of the Bank Secrecy Act and its related regulations and that some of those failures occurred in the Southern District of California. Though he knew about these failures, MARTIN did not correct them, despite knowing he had a duty to do so.

j. In or about March 2012, MARTIN emailed FIU personnel, and stated that increasing the number of accounts on the Verified Activity List "continues to be an area of interest for GM [MARTIN] as this will continue to reduce the amount of actual suspects we have to work, month after month."

4. MARTIN committed the foregoing acts before the willful violations of Title 31, Code of Federal Regulations, Sections 1020.210, 1020.320(a)(2)(ii), and 1020.320(a)(2)(iii), and Title 12, Code of Federal Regulations, Sections 21.21(c) and 21.21(d), were completed.

5. MARTIN committed the foregoing acts while he was aware of the particular circumstances that constituted the offense against the United States of America, and at a time when MARTIN still had a realistic opportunity to withdraw from the crime.

V

**POTENTIAL PENALTIES**

Defendant understands that the crime to which Defendant is being charged carries the following penalties:

A. a maximum 5 years in prison;

B. a maximum $250,000 fine;

C. a mandatory special assessment of $100 per count; and

D. a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release,

requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release.

## VI
## DEFENDANT'S REPRESENTATION THAT ENTRY INTO THIS AGREEMENT IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charge and the consequences of this Agreement.

B. No one has made any promises or offered any rewards in return for Defendant's entry into this Agreement, other than those contained in this Agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce his entry to this Agreement.

## VII
## ENTIRE AGREEMENT

This Agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

## VIII
## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

## IX
## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this Agreement, Defendant certifies that Defendant has read it (or that it has been read to him in his native language). Defendant has discussed the terms of this Agreement with defense counsel, and fully understands its meaning and effect.

///
///
///

X

**DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

ALANA W. ROBINSON
Acting United States Attorney

ERIC BESTE
Chief, Fraud Section

*/s/ Daniel C. Silva*

DANIEL C. SILVA
MARK W. PLETCHER
PHILLIP L.B. HALPERN
    Assistant U.S. Attorneys

KENNETH A. BLANCO
Acting Assistant Attorney General
Criminal Division

DEBORAH L. CONNOR
Acting Chief, Money Laundering and
Asset Recovery Section

_____
KEVIN G. MOSLEY
MARIA K. VENTO
    Trial Attorneys

11/17/2017
DATED

*/s/ Robert Long*
ROBERT LONG
Defense Counsel

**I AGREE TO THE FOREGOING PROVISIONS.**

16 November 2017
DATED

*/s/ George M. Martin*
GEORGE M. MARTIN
Defendant

Deferred Prosecution Agreement

14

Def. Initials _GM_
17CR____

X

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

ALANA W. ROBINSON
Acting United States Attorney

ERIC BESTE
Chief, Fraud Section

*[signature]*

DANIEL C. SILVA
MARK W. PLETCHER
PHILLIP L.B. HALPERN
Assistant U.S. Attorneys

KENNETH A. BLANCO
Acting Assistant Attorney General
Criminal Division

DEBORAH L. CONNOR
Acting Chief, Money Laundering and
Asset Recovery Section

*[signature]*

KEVIN G. MOSLEY
MARIA K. VENTO
Trial Attorneys

11/17/2017
DATED

*[signature]*
ROBERT LONG
Defense Counsel

**I AGREE TO THE FOREGOING PROVISIONS.**

16 November 2017
DATED

*[signature]*
GEORGE M. MARTIN
Defendant

Def. Initials _____
17CR_____

## APPROVAL OF THE COURT

Considering the foregoing, and by agreement of the parties:

1. The Court approves the foregoing deferred prosecution agreement.

2. The period of delay during which prosecution is deferred by the United States pursuant to the foregoing written deferred prosecution agreement with defendant GEORGE M. MARTIN shall be excluded under the Speedy Trial Act (Title 18, United States Code, Section 3161(h)(2)).

DATED: 12/14, 2017

UNITED STATES MAGISTRATE JUDGE
HON. JAN M. ADLER

15

Def. Initials _GM_
17CR____